AO 91 (REV.5/85) Criminal Complaint

AUSA Matthew M. Getter (312) 886-7651

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JENNIE MORELAND, aka "Jennie Ellis"

CRIMINAL COMPLAINT

CASE NUMBER: MAGISTRATE JUDGE COLE

UNDER SEAL 10CR 0734

FILED
SEP 1 2010
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: From no later than on or about March 25, 2008, to no earlier than on or about March 30, 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, JENNIE MORELAND, defendant herein:

devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, on or about March 28, 2008, for the purpose of executing such scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer from U.S. Bank, in Minnesota, to National City Bank in Michigan;

in violation of Title 18, United States Code, Section 1343. I further state that I am a Special Agent with the United States Department of Labor, Office of Inspector General, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

SEAN MOORE
Special Agent, United States Department of Labor, Office of Inspector General

Sworn to before me and subscribed in my presence,

September 1, 2010          at  Chicago, Illinois
Date                            City and State

JEFFREY COLE, U.S. Magistrate Judge
Name & Title of Judicial Officer            Signature of Judicial Officer

UNITED STATES DISTRICT COURT    )
    ) ss
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, SEAN MOORE, being duly sworn, state as follows:

1. I am a Special Agent with the United States Department of Labor, Office of Inspector General, and have been so employed for approximately one year. Prior to that, I was a special agent with the United States Secret Service for about 9 ½ years. My current responsibilities include the investigation of white collar crime, including mail, wire, and bank fraud, as well as union-related fraud.

2. This affidavit is submitted in support of a criminal complaint alleging that JENNIE MORELAND has violated Title 18, United States Code, Section 1343. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging JENNIE MORELAND with wire fraud, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement agents, my review of documents, and interviews of non-law enforcement individuals.

4. Prior to approximately February 2008, JENNIE MORELAND was the Secretary-Treasuer of a labor union called the American Federation of Professionals ("AFP"). In late February 2008, AFP became affiliated with United Electrical, Radio and Machine Workers of America ("UE"), another labor union. Once AFP became affiliated with UE, JENNIE MORELAND was hired by UE to serve as a Project Organizer for UE.

5. One of the groups of laborers represented by AFP were members of the Public Works Department of the City of Calumet City, Illinois ("Calumet City").

6. In approximately March 2008, JENNIE MORELAND, who lived in Naperville, Illinois, called Individual A, who lived in South Carolina, and told Individual A that Calumet City had not paid money it was required to pay for insurance coverage for workers who were members of AFP. JENNIE MORELAND told Individual A that AFP would be receiving the money from Calumet City soon, but that she needed money in the short run to cover those insurance expenses until such time as Calumet City provided the money it owed to AFP. JENNIE MORELAND asked Individual A to lend her $45,000.

7. JENNIE MORELAND told Individual A that Calumet City had signed a promissory note agreeing to pay JENNIE MORELAND over $65,000 within three months.

8. On or about March 26 or March 28, 2008, JENNIE MORELAND, from the Naperville, Illinois area, provided to Edward Jones Investments, an institution in which Individual A kept money, certain documents that JENNIE MORELAND offered as proof that Calumet City owed over $65,000 to JENNIE MORELAND. Those documents included the

following: (1) a purported promissory note from Calumet City to JENNIE MORELAND, which was dated March 25, 2008, and which stated that Calumet City would pay JENNIE MORELAND within 90 days the sum of $65,977.34 together with interest at the rate of 15% per annum; and (2) a letter purportedly from the Mayor of Calumet City to JENNIE MORELAND and Individual B thanking JENNIE MORELAND and Individual B for their "assistance in this time of crisis," and confirming that they would "resolve this matter as agreed." The purported promissory note and a fax cover sheet contain a fax tag line showing the name "Jennie Moreland" and a partially legible number suggesting they were sent from a number in the Naperville, Illinois area. Moreover, phone/fax records I have reviewed show that on March 26 and March 28, 2008, Edward Jones received faxes from (630) 420-2870, a number that records show also had telephone contact with Individual A's home number on March 25 and March 26, 2008. Individual A told me that Individual A has the number (630) 420-2870 listed in Individual A's personal phone book as the home telephone number for JENNIE MORELAND.

9. On or about March 26 or March 28, 2008, JENNIE MORELAND provided to Edward Jones Investments a promissory note in which JENNIE MORELAND agreed to pay Individual A by August 1, 2008, the sum of $45,000 and interest at the yearly rate of 15% on the unpaid balance.

10. Individual A agreed to lend JENNIE MORELAND $45,000.

11. JENNIE MORELAND provided Edward Jones with information concerning where to wire the money to JENNIE MORELAND, which stated that JENNIE MORELAND's destination bank account was at a Downers Grove, Illinois branch of National City Bank.

12. On or about March 27, 2008, Individual A signed a letter of authorization to Edward Jones Investments directing Edward Jones Investments to wire $45,000 from Individual A's account at Edward Jones Investments to JENNIE MORELAND's bank account at National City Bank.

13. On or about March 28, 2008, Edward Jones Investments in St. Louis, Missouri, sent an electronic transmission to U.S. Bank, in Minnesota, where Edward Jones Investments held certain of its funds, instructing U.S. Bank to wire $45,000 to JENNIE MORELAND's bank account. On or about March 28, 2008, U.S. Bank, in Minnesota, sent a wire transmission through the Fedwire system to National City Bank, in Michigan, that electronically transferred $45,000, resulting in a debit of $45,000 to Individual A's account at Edward Jones Investments and a credit of $45,000 to JENNIE MORELAND's bank account at National City Bank. Records show that in about March 2008, JENNIE MORELAND banked at a branch of National City Bank in Downers Grove, Illinois.

14. Law enforcement investigators interviewed representatives of Calumet City and asked about the purported promissory note and letter from Calumet City. Calumet City

officials confirmed that Calumet City had no such loan or obligation to JENNIE MORELAND and that the promissory note and the letter were fraudulent.

15.  According to Individual A, in September 2008, JENNIE MORELAND wrote Individual A a check in the amount of $9,999 as a partial repayment of the $45,000 loan, but Individual A received no other payments from JENNIE MORELAND after that. Investigators have not yet been able to locate a check from JENNIE MORELAND to Individual A in the amount of $9,999 (or any amount close to that), but investigators did find two checks from JENNIE MORELAND to Individual A from December 2008 and January 2009, each in the amount of $202. Individual A related that those two checks were JENNIE MORELAND's partial repayment of a prior loan Individual A had made to JENNIE MORELAND.

FURTHER AFFIANT SAYETH NOT.

_____
SEAN MOORE
Special Agent, United States Department of Labor, Office of Inspector General

SUBSCRIBED AND SWORN to before me on September 1, 2010.

_____
JEFFREY COLE
United States Magistrate Judge

5